UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NORVELL GRUBER,

       Plaintiff,

vs.                                                              Case No.  3:04-cv-906-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability benefits under Title XVI on June 24, 2002, alleging he became disabled that same day.  (Tr. 43-46)  The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 28-30, 32-35).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on January 13, 2004.  (Tr. 184-

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16).

201).  On April 14, 2004, the ALJ issued a decision finding Plaintiff was not disabled.

(Tr. 14-24).  Plaintiff filed a Request for Review by the Appeals Council, which was

denied on July 16, 2004.  (Tr. 4-6), thereby making the ALJ's decision the final decision

of the Commissioner.  Plaintiff timely filed his Complaint in the U.S. District Court on

September 17, 2004.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since June 24, 2002, due to a hernia, hepatitis, a

possible cardiovascular accident ("CVA") and a history of alcohol and drug abuse.

### B.    Summary of Evidence Before the ALJ

Plaintiff was fifty-three years of age on the date the ALJ's decision was issued.

(Tr. 187).  He completed an eighth-grade education[2] and testified he is able to read and

write.  (Tr. 187).  Plaintiff has past relevant work experience as a carpenter, crane

operator, and handy man.  (Tr. 50, 189).  Plaintiff's medical history is discussed at

length in the ALJ's decision.  By way of summary, Plaintiff presented to St. Vincent's

hospital on June 19, 2002 with a nosebleed, nausea, diarrhea and left-sided weakness.

(Tr. 74-76).  Plaintiff underwent a battery of tests.  An abdominal sonogram revealed a

mass in his pancreas and gallbladder wall thickening.  (Tr. 86).  A follow-up CT scan of

Plaintiff's abdomen revealed that the mass believed to be in his pancreas was actually

in his liver and suggested "cirrhosis with possible associated protovenous

---

[2] The ALJ states Plaintiff has a tenth grade education, however, during the hearing, Plaintiff
testified he only completed the eighth grade and "was almost through the ninth [grade]."  (Tr. 187).

hypertension." (Tr. 94-95). An electrocardiogram showed sinus tachycardia with no signs of acute ischemia. (Tr. 83).

On June 30, 2002, Plaintiff went to the Emergency Room at Baptist Hospital with suspected liver failure, swollen/tender feet and visual hallucinations. (Tr. 113–14). Plaintiff was discharged later that day and told to contact a gastroenterologist and a nutritionist. (Tr. 112). The record does not reflect that he did so.

On February 6, 2003, Dr. Timothy McCormick, D.O. performed a consultative examination of Plaintiff. (Tr. 130-35). Dr. McCormick noted that Plaintiff appeared somewhat distressed and dysfunctional. (Tr. 132). Plaintiff reported he stopped working June 15, 2002 because he had a stroke. (Tr. 130). Plaintiff's grip strength and fine manipulation were normal. Id. He had full strength and range of motion in both his upper and lower extremities. Id. Plaintiff was able to perform straight leg raises to 90 degrees in the seated position and 45 degrees in the supine position. Id. Plaintiff's spine had full range of motion and no tenderness. Id. Dr. McCormick concluded that Plaintiff appeared in fair health and "somewhat dysfunctional" with complaints of dizziness and weakness that Dr. McCormick had no basis for except possibly the hepatitis. (Tr. 133).

Plaintiff underwent a psychological evaluation with Dr. Lauren Lucas, Ph.D., on February 18, 2003. Plaintiff reported a general pain level of five on a ten point scale. (Tr. 136). He also claimed his memory for new material was weak and that he had poor eyesight. Id. Dr. Lucas noted Plaintiff's affect was appropriate and he appeared to put forth good effort on all tasks presented. Id. Plaintiff described his daily routine and

stated he did his own housework and laundry, used a hot plate or microwave for cooking, watched television, visited with his brother, made small display cases as he felt able and walked some for exercise.  (Tr. 137).  Dr. Lucas concluded Plaintiff's insight was poor, his judgment was fair and his prognosis was guarded.  Id.  She further determined Plaintiff was competent to manage his own benefits and appeared psychologically competent to perform routine repetitive tasks and to appreciate the need for appropriate relations among co-workers and supervisors.  Id.

On February 23, 2003, non-examining physician, Nicholas Bancks, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment.  (Tr. 140-47).  Dr. Bancks determined Plaintiff was occasionally able to lift up to 50 pounds; frequently able to lift and/or carry 25 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday and to sit (with normal breaks) for a total of 6 hours in an 8-hour workday.  (Tr. 141).  It was also determined that Plaintiff could occasionally balance and never climb ladders, ropes or scaffolds.  (Tr. 142).  He found Plaintiff was subject to no manipulative, visual or communicative limitations.  (Tr. 143-44).  Dr. Bancks found Plaintiff should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and hazards such as machinery and heights.  (Tr. 144).  Finally, Dr. Bancks opined that the severity or duration of Plaintiff's symptoms were disproportionate to the expected severity or expected duration on the basis of Plaintiff's medically-determinable impairments.  Id.

On March 11, 2003, Dr. Steven L. Wise, Psy.D., completed a Psychiatric Review Technique form on Plaintiff.  (Tr. 148-61).  Dr. Wise only noted mild functional limitations.  (Tr. 158).

Plaintiff sought treatment at Shands Jacksonville between February 2003 and December 2003.  On February 4, 2003, Plaintiff complained of low back pain, left hip pain, difficulty sleeping and leg cramps.  (Tr. 181).  On May 30, 2003, Plaintiff underwent an abdominal sonogram which revealed "increased echogenicity of the liver, consistent with hepatocellular disease," "left renal echogenic focus, likely consistent with calculus," a "left parapelvic simple cyst," and splenomegaly.  (169).  Plaintiff appeared for a follow-up visit on June 4, 2003 and complained of severe lower back pain and claimed to be unable to engage in prolonged standing, walking and sitting.  (Tr. 167).  On November 21, 2003, Plaintiff complained of itching, depression and chronic lower back pain.  (Tr. 165).  It was noted that Plaintiff had been given a prescription for Paxil but that he did not fill it.  Id.  On December 17, 2003, Marion Gruber, MS ARNP, completed a note in which she reported that Plaintiff was being treated for cirrhosis, chronic degenerative back pain with sciatica, hypertension and depression.  (Tr. 163).  Ms. Gruber opined that due to the "progressive nature of these problems, it is doubtful [Plaintiff] will be able to work in the future."  Id.

At the hearing, Plaintiff testified about his pain and other subjective symptoms which prevented him from working.  Specifically, Plaintiff testified that when he took his medications, he became extremely ill and nauseous.  (Tr. 189, 193).  Plaintiff further testified his medication caused severe muscle cramps two or three times per week,

lasting from 15 minutes to two hours, and daily stomach cramps that lasted for up to one and one half hours.  (Tr. 191).  Plaintiff claimed he could not walk up a set of stairs without having to sit down, and he had to spend two to three hours in the afternoon resting or reclining due to fatigue.  (Tr. 193).  He also alleged he could not sit or stand longer than two hours without experiencing sharp back pain.  (Tr. 196).  Plaintiff testified he had "[q]uite a bit of trouble" with memory, and that he had a friend who helped him remember appointment dates.  (Tr. 198).

### C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education,

-6-

and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, June 24, 2002.  (Tr. 18, 23).  At step two, the ALJ determined Plaintiff had a "hernia, hepatitis, a possible cardiovascular accident (CVA), and a history of alcohol and drug abuse, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 19, 23).

The ALJ then found Plaintiff retained the residual functional capacity to perform light work.  (Tr. 22).  Specifically, the ALJ determined Plaintiff could perform work which:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Id.  The ALJ went on to explain that:

> [t]o be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

Id.  In making this determination, the ALJ determined that Plaintiff's testimony regarding the severity of his symptoms and the extent of his limitations was not entirely credible. (Tr. 21).  At step four, the ALJ determined that based on his RFC, Plaintiff could not perform any of his past relevant work as the exertional demands exceeded his current RFC.  (Tr. 22).  Accordingly, the ALJ proceeded to step five to determine whether Plaintiff could perform other work that exists in the national economy.  In finding that Plaintiff was so able, the ALJ applied the Medical-Vocational Guidelines (the "grids"), and concluded that Plaintiff was not disabled pursuant to Medical-Vocational Rule 202.10.  (Tr. 22-23).

### D.    Evidence Presented After the Hearing

After the hearing on January 13, 2004, Plaintiff underwent a liver biopsy on February 5, 2004.  Plaintiff's lawyer sent the records regarding the biopsy to the ALJ on March 19, 2004.  (Doc. 14).  The ALJ issued his decision April 14, 2004.  According to Plaintiff's counsel, she believed the biopsy records became part of the record and therefore, did not include them along with the Request for Review of Hearing Decision/Order filed on May 21, 2004.  (Doc. 14, p.2; Tr. 12).  Plaintiff's attorney did however, include a legal brief in which she argued that the ALJ erred in failing to find that Plaintiff's liver disease satisfied the criteria necessary to meet listing 5.05F(3). (Doc. 14, p.2; Tr. 8).  In the brief, Plaintiff's lawyer referenced the February 5, 2004 biopsy.  Id.

On July 16, 2004, the Appeals Counsel issued its notice informing Plaintiff that it denied Plaintiff's request for review. (Tr. 4). Plaintiff now seeks a sentence six remand to consider the biopsy records.

III.   **STANDARDS OF LAW**

A.   <u>**The Standard of Review**</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.    ANALYSIS

Plaintiff argues several issues on appeal.  First, Plaintiff argues the ALJ erred in rejecting Plaintiff's subjective complaints of pain.  (Doc. 10, pp. 8-10).  Second, Plaintiff asserts the ALJ committed error in failing to consider all of Plaintiff's impairments in determining Plaintiff's RFC.  (Doc. 10, pp.11-13).  Next, Plaintiff takes the position that the ALJ erred by improperly applying the grids.  (Doc. 10, pp. 6-8).  Finally, Plaintiff claims the Court should remand the case back pursuant to sentence six based on new evidence.  (Doc. 14).  Because the Court finds the first issue dispositive, the Court begins with it.

### A.    Whether the ALJ erred in rejecting Plaintiff's subjective complaints of pain

During the hearing, Plaintiff testified that when he took his medications, he became extremely ill and nauseous.  (Tr. 189, 193).  Plaintiff further testified his medication caused severe muscle cramps two or three times per week, lasting from 15 minutes to two hours, and daily stomach cramps lasting for up to one and one half hours.  (Tr. 191).  Plaintiff claimed he could not walk up a set of stairs without having to sit down, and that he had to spend two to three hours in the afternoon resting or reclining due to fatigue.  (Tr. 193).  He also alleged he could not sit or stand longer than two hours without experiencing a sharp back pain.  (Tr. 196).  Plaintiff testified he had "[q]uite a bit of trouble" with memory, and that he had a friend who helped him remember the dates of and took him to his appointments.  (Tr. 198).

In the final decision, the ALJ found "[t]he testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record." (Tr. 21).  Plaintiff claims this finding is error in that the objective medical evidence supports Plaintiff's testimony and Plaintiff's condition can reasonably be expected to produce the symptoms Plaintiff alleges.  Defendant, on the other hand, argues the ALJ properly discounted Plaintiff's subjective allegations.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). In this case, the ALJ determined Plaintiff's hernia, hepatitis, possible cardiovascular accident (CVA), and history of alcohol and drug abuse were severe impairments and therefore, Plaintiff has satisfied the first part of the test.  As for the second part, the ALJ specifically found that Plaintiff's subjective symptoms were not supported by the objective medical evidence.  (Tr. 21).  "When the objective medical evidence does not

-11-

confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain." Geiger v. Apfel, 2000 WL 381920 *7 (M.D. Fla. 2000).  The ALJ, however, did not make a specific finding regarding whether Plaintiff's symptoms were such that they could be reasonably expected from Plaintiff's medical condition.

Where an ALJ decides not to credit a claimant's testimony about pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  In the instant case, the Court finds the ALJ failed to fully articulate reasons for rejecting Plaintiff's subjective complaints.

Although the ALJ made note of Plaintiff's subjective complaints of leg cramps, fatigue, nausea, weakness, back pain, depression and memory loss; in his decision to discount Plaintiff's subjective complaints (Tr. 20), the ALJ only referenced Plaintiff's back pain and memory loss (Tr. 21).  In discounting Plaintiff's back pain and memory loss, the ALJ stated:

> The claimant reported back pain, but during his examination with Dr. McCormick, there was no tenderness, and range or motion was normal.  Straight leg raises were also negative in the seated position.  Straight leg raises were also negative on February 4, 2003.  The claimant described memory loss, but was able to retain an address after five minutes with interruption.  Dr. Lucas opined that the claimant was able to perform routine, repetitive tasks, and appreciate the need for appropriate relations among coworkers and supervisors.  A report of contact in March 2003 indicated that the claimant was able to vacuum, cook small meals without burning them, clean the kitchen, wash the dishes, do laundry every 1-2

weeks, visit his brother once per week, and shop for groceries.

(Tr. 21) (internal citations omitted).  As the ALJ found Plaintiff's hepatitis a severe impairment and Plaintiff testified that he suffered from severe fatigue, the ALJ should have at least discussed the fatigue in his analysis regarding why Plaintiff's testimony was being discredited.  Obviously, the analysis regarding back pain and memory loss sheds no light on Plaintiff's claim of severe fatigue.  Additionally, Plaintiff's daily activities are not necessarily inconsistent with a claim that he suffers from severe fatigue.  Additionally, as noted above, the ALJ made no finding regarding whether Plaintiff's fatigue was such that it could be reasonably expected from Plaintiff's hepatitis.  Plaintiff argues that "Hepatitis C is known to cause overwhelming fatigue . . ." (Doc. 10, p.10).  The ALJ should have addressed this and then specifically stated why he found Plaintiff's claim of fatigue not credible.

The Court believes Plaintiff's subjective complaints are particularly relevant in this case because at step 5 of the sequential analysis, the ALJ relied solely on the grids to make the determination that Plaintiff was able to perform work existing in the national economy.  Exclusive reliance on the grids is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-3 (11th Cir. 1987).  Because Plaintiff's fatigue (as described by Plaintiff) would significantly limit his ability to work, the ALJ must make a specific finding regarding why he decided to reject this testimony as not credible.  As the task of assessing credibility is "'particularly suited to the fact finder,'" the undersigned

-13-

will remand the case to permit the ALJ to develop the record fully regarding Plaintiff's subjective complaints (including fatigue) to ensure that Plaintiff suffers from no non-exertional limitations. Callahan v. Barnhart, 186 F.Supp.2d 1219, 1228 (M.D. Fla. 2002) (quoting, Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986) (per curiam)).

After reviewing Plaintiff's subjective complaints and making a credibility finding, the ALJ should proceed through steps 4 and 5 of the sequential analysis.  If, after further consideration in light of this Order, the ALJ determines that any of Plaintiff's subjective complaints constitute a non-exertional impairment, he should obtain further testimony from a VE as appropriate and apply the grids as a framework in reaching a revised decision. See 20 C.F.R. 404.1569a(d).  Additionally, as this case is being remanded, the undersigned will direct the ALJ to consider the evidence regarding Plaintiff's biopsy results and make a determination regarding whether that evidence supports a conclusion that Plaintiff's condition meets or is medically equal to Listing 5.05.  As such, the Court will deny as moot Plaintiff's Motion for Remand pursuant to Sentence Six (Doc. 14).

**V.      CONCLUSION**

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g) for the purpose of allowing the ALJ to make express findings concerning Plaintiff's subjective complaints (particularly fatigue) and for any further proceedings the ALJ finds necessary in light of those new findings.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

-14-

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, this  22ⁿᵈ  day of

March, 2006.


_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record